UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SHARON L. PATTERSON, | ) | No. 04-02461 SC |
| Plaintiff, | ) | |
| v. | ) | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT |
| JO ANNE BARNHART, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## I.   INTRODUCTION

Sharon L. Patterson ("Plaintiff" or "Claimant") moves for summary judgment on her action seeking review of the Social Security Commissioner's final decision denying Plaintiff's claim for Social Security disability benefits.  Defendant Jo Anne Barnhart ("Defendant" or "Commissioner") has cross-motioned for summary judgment.  For the reasons explained below, this Court hereby DENIES Plaintiff's motion and GRANTS Defendant's cross-motion.

//
//
//

**II.   BACKGROUND**

Claimant Sharon Patterson worked as a psychiatric technician for Mendocino County from October 1990 until December of 1993. Administrative Record ("AR") at 424-25.  During the last six months of her employment as a psychiatric technician, Claimant suffered two separate on-the-job injuries to her back that ultimately prevented her from continuing to work as a technician. Id.  First, in June 1993, Claimant was assisting in moving a patient down a hallway when Claimant was unexpectedly saddled with the entirety of the patient's weight, causing unspecified injury to Plaintiff's back.  Id.  After receiving treatment from a physician and a chiropractor, Plaintiff returned to work.  AR at 214.  In September 1993, Claimant was attempting to restrain a patient when she experienced a "pop" in her back and felt pain in her right side and leg.  Id.  Despite enjoying some progress as a result of her physical therapy, Claimant did not feel able to return to her full work duties by December 1993 because of continued back spasms and back pain.  AR at 197; Plaintiff's Memorandum in Support of Motion for Summary Judgment at 4 ("Pl. Mem.").  Claimant ultimately left her position as a psychiatric technician in December 1993.  AR at 225.

Claimant continued to experience pain and spasms in her back during the Spring of 1994, and an MRI performed in April of that year revealed degeneration of the L4-5 and L5-S1 intervertebral discs.  AR at 190.  The April 1994 MRI also demonstrated a "broadly based bulge of the disc annulus" at L4-5, and "central spinal stenosis" at L4-5 and L5-S1, both described as

2

1  "mild."  Id.  Claimant spent the remaining months in 1994 and the
2  beginning of 1995 participating in a variety of treatment and
3  therapy programs for her back pain and depression, evidently
4  without much success.  Pl. Mem. at 5-6.  During this period,
5  Plaintiff worked as a drug and alcohol counselor for several hours
6  a day, twice a week, but reports that she was ultimately unable to
7  continue in this line of work beyond February 1995 because
8  management requested that she increase her workload to six hours
9  per day, a duration Plaintiff claims she was not physically
10 capable of accommodating.  AR at 424.

11      In January 1996, Claimant was evaluated by Dr. Dee Filgas,
12 who reported that Claimant was suffering from disc degeneration,
13 leg pain, intermittent urinary incontinence, depression, and
14 insomnia.  AR at 214-219.  In February 1997, Dr. Filgas referred
15 Plaintiff to Dr. Gary McCarthy, who noted the spread of
16 Plaintiff's leg pain to her left side, and confirmed earlier
17 diagnoses of limited range of motion, considerable back pain, and
18 underlying depression.  AR at 253.  Upon reviewing the results of
19 a May 1997 MRI which showed "a very large L5-4 disc severely
20 compressing the thecal sac," Dr. McCarthy recommended removal of
21 the bulging disc in a procedure known as a lumbar laminectomy, a
22 procedure he successfully performed in June 1997.  AR at 248.

23      In September 1997, Dr. A. K. Bhattacharyya performed a
24 disability evaluation of the Plaintiff at the request of the State
25 Department of Social Service.  AR at 231.  After reviewing
26 Plaintiff's medical records, including the reports of Dr.
27 McCarthy, Dr. Bhattacharyya opined that while the Plaintiff

experienced lower back pain as a result of the laminectomy, she did not demonstrate evidence of neuromuscular dysfunction related to the surgery, and was capable of returning to work based on her job qualifications.  AR at 232.[1]

An unknown consultant who reviewed Claimant's medical records but who did not examine the Claimant concluded in October 1997 that Plaintiff could return to light duty.  AR at 239.  These findings stand in some contrast to the reports issued by Dr. McCarthy over the same time period, in which he found that Claimant's condition was worsening.  AR at 244.

In May 1998, Claimant was admitted to the emergency department of Redbud Community Hospital after experiencing numbness in her feet.  AR at 339.  Dr. Simmons, the physician who reviewed films taken of Plaintiff's lower back during her stay in the emergency department, noted "minimal degenerative changes" in Plaintiff's lumbosacral spine.  AR at 340.

A hearing on Plaintiff's claim for Social Security disability benefits was held on December 1, 1998, in Ukiah, California, before Administrative Law Judge ("ALJ") James S. Carletti.  AR at 29.  On January 12, 1999, the ALJ ruled that Claimant was not disabled, and that decision became final when the Appeals Council declined to review the ALJ's decision.  AR at 10, 5-6.  Plaintiff then filed an action in the Northern District of California,

---

[1] Plaintiff took exception to these conclusions and has consistently maintained that Dr. Bhattacharyya only examined her for a very short period of time, during which he did not perform those tests necessary to arrive at his conclusion that Plaintiff was able to return to work.  In this respect, Plaintiff has asserted that Dr. Bhattacharyya's report is fraudulent.

4

1  seeking review of the Commissioner's decision, see Patterson v.
2  Barnhart, No. C-00-04800 SC (N.D. Cal. Jul. 3, 2001), an action
3  that resulted in a remand following joint stipulation.  In that
4  case, this Court remanded the matter to the ALJ for purposes of
5  "allowing the Administrative Law Judge (ALJ) to consider and
6  address Claimant's allegations regarding the consultative
7  examination by neurologist A. K. Bhattacharyya [and to] reassess
8  the credibility of Claimant's allegations of pain and
9  limitation...and re-evaluate Claimant's residual functional
10 capacity to determine whether Claimant can still perform other
11 work in the national economy."  Id.

12      On remand, Plaintiff appeared at a hearing before ALJ Gilbert
13 Pavlovsky on April 16, 2002, in Ukiah, California.  AR at 512.
14 Prior to the hearing, Plaintiff moved for and obtained a subpoena
15 ordering Dr. Bhattacharyya to appear at the hearing so that
16 Plaintiff would have the opportunity to cross-examine him as to
17 the basis for his medical conclusions.  AR at 450-51.  Dr.
18 Bhattacharyya did not appear at the hearing, and the ALJ did not
19 enforce the subpoena.[2]  AR at 535.  On September 12, 2002, the ALJ
20 issued a decision finding that Plaintiff was not disabled, and
21 therefore not entitled to Social Security benefits.  AR at 357-65.
22 In his decision, the ALJ considered testimony presented by the
23 Plaintiff and her family members, and made findings with respect
24 to the credibility of that testimony based upon the extent to

---

[2] It is at least worth noting that Claimant did not voice any objection or protest at her hearing when it was determined that Dr. Bhattacharyya would not honor the subpoena.

5

1  which those witnesses were in a position to observe Plaintiff's
2  limitations, as well as the degree to which their testimony was
3  consistent with reports detailing Plaintiff's daily activities.
4  Id.  That decision became final on April 13, 2004, when the
5  Appeals Council declined to review the ALJ's decision.  AR at 348.
6  Plaintiff then brought this action and now moves for summary
7  judgment.

### III. LEGAL STANDARD

This court may set aside the decision of the ALJ if it is based on an incorrect application of the law or is not supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence" is the relevant evidence which a reasonable person might accept as adequate to support the ALJ's conclusion.  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).  In order to be "substantial," the evidence must amount to "more than a mere scintilla," but need not rise to the level of a preponderance. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  Where the evidence could reasonably support either affirming or reversing the ALJ's decision, this Court may not substitute its judgment for the ALJ's decision.  Reddick, 157 F.3d at 720-21.  "The ALJ is responsible for determining credibility and resolving conflicts in medical testimony and ambiguities."  Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001).

### IV. DISCUSSION

This case calls on the Court to decide two different issues: (1) whether the ALJ complied with this Court's remand order of July 3, 2001, and (2) whether the ALJ's decision was supported by

6

substantial evidence. The Court will first address Plaintiff's claims that the proceedings on remand did not comply with this Court's order, and will then determine whether the ALJ's opinion was supported by substantial evidence.

A. <u>The Proceedings on Remand and the Challenged Report</u>

The heart of Plaintiff's claim before this Court is that the ALJ committed legal error by relying, to some extent, on Dr. Bhattacharyya's report in which he opined that Plaintiff was able to return to work. See Pl's. Mem. at 12. Specifically, Plaintiff argues that she was denied due process when the ALJ failed to enforce the subpoena requiring Dr. Bhattacharyya to appear at the hearing, and that this failure to compel Dr. Bhattacharyya to appear at the hearing contradicted the terms of this Court's remand order. <u>Id</u> at 12-13.

The federal courts have reached different results with respect to the question of the extent of a claimant's due process right to cross-examine a witness in Social Security disability cases. The Supreme Court has not squarely ruled on this issue, but did provide some insight into this question when, in <u>Richardson v. Perales</u>, it ruled that medical reports could be received in evidence, despite their hearsay character and absence of cross-examination, and could be relied on as substantial evidence supporting a decision adverse to the claimant where the claimant has not exercised his right to subpoena the physician and thereby provide himself with the opportunity for cross-examination. 402 U.S. 389, 402 (1971). In <u>Lidy v. Sullivan</u>, the Fifth Circuit took the implication of the Supreme Court's decision

7

in Perales a step further when it held that a claimant has a right to cross-examine an examining physician when the claimant has properly requested a subpoena. 911 F.2d 1075, 1077 (5th Cir. 1990). In so holding, the Fifth Circuit noted support of varying degrees for that proposition among several other federal courts of appeal. Id; compare Coffin v. Sullivan, 895 F.2d 1206, 1212 (8th Cir. 1990) (stating that "[d]ue process requires that a claimant be given the opportunity to cross-examine and subpoena the individuals who submit reports.") with Townley v. Heckler, 748 F.2d 109, 114 (2d Cir. 1984) (finding that a claimant has a due process right to cross-examine the author of an adverse report and to present rebuttal evidence where the report is submitted post-hearing).

On the other hand, in Flatford v. Chater, the Sixth Circuit held that a Social Security claimant did not necessarily have the right to subpoena and cross-examine a medical expert who authored a report that was adverse to his claim and was submitted to the ALJ after conclusion of the hearing. 93 F.3d 1296 (6th Cir. 1996). The court found that the ALJ's decision whether to issue a subpoena in those situations was governed by the more general duty imposed on all ALJs to ensure full and fair development of the record. Id. at 1306-07.

Finally, although the Ninth Circuit has not specifically addressed this precise question, the court's ruling in Solis v. Schweiker provides ample guidance for this Court to resolve this issue. 719 F.2d 301 (9th Cir. 1983). In Solis, the Ninth Circuit held that "where [a] physician is a crucial witness whose findings

8

1 substantially contradict the other medical testimony, and
2 when...interrogatories are an inadequate substitute for cross-
3 examination, [a] claimant has been denied procedural due process
4 if his request to subpoena the physician is not granted."  719
5 F.2d at 301.  Together, the Ninth Circuit's holding in Solis and
6 the Supreme Court's ruling in Perales provide support for
7 Claimant's position that the ALJ should either have enforced the
8 subpoena issued to Dr. Bhattacharyya or disregarded his medical
9 opinion.  See id; Perales, 402 U.S. at 402 (suggesting that the
10 "right" to subpoena a physician includes the attendant
11 "opportunity" to cross-examine him).  This Court therefore finds
12 that the ALJ erred in considering the medical opinion of Dr.
13 Bhattacharyya without having enforced the subpoena and provided
14 Claimant an opportunity to cross-examine him.
15   However, as explained below, the ALJ did not need to rely on
16 Dr. Bhattacharyya's contested opinion in order to properly reach a
17 finding that Claimant was not disabled.  The role of the
18 challenged report in the overall scheme of Plaintiff's disability
19 claim is therefore not dispositive, and the Court will now turn to
20 the question of whether the ALJ's decision was otherwise supported
21 by substantial evidence.
22   B. Was the ALJ's Decision Supported by Substantial Evidence?
23   In her moving papers, Plaintiff argues that the ALJ's
24 decision was not supported by substantial evidence because he
25 improperly rejected her testimony and the testimony provided by
26 her family members.  Pl. Mem. at 16.  As to the testimony provided
27 by Claimant, the ALJ expressly considered her alleged functional
28

9

limitations and symptoms.  See AR at 361-63.  After reviewing Claimant's testimony along with her own reports of her daily activities, the ALJ determined that "the alleged intensity, persistence, and functionally limiting effects of claimant's symptoms are not found to be entirely credible."  AR at 363; see also AR at 362 ("Claimant's daily activities also show that her symptoms are not as severe as claimed.").  This is precisely the kind of credibility determination entrusted to ALJs in Social Security disability cases and, consequently, is expressly outside the province of District Courts sitting in review of the Social Security Commissioner's final decision.  See Lewis, 236 F.3d at 509.

Plaintiff also argues that the ALJ erred in rejecting the testimony of Plaintiff's in-laws on the grounds that they see her "rarely," since Plaintiff's father-in-law reported visiting her "every 2-3 months...usually for several days at a time," and Plaintiff's mother-in-law reported seeing her "2 or 3 times a year."  Pl. Mem. at 16; AR at 460, 462.  Without determining what extent of yearly visitation with one's in-laws would constitute "rare" as opposed to "frequent," the Court is satisfied that the ALJ acted within his discretion when he considered the testimony of Plaintiff's in-laws but ultimately found their assertions with respect to the extent of Plaintiff's alleged limitations not "entirely credible."  AR at 363; Cf. Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993) (noting that the extent to which a lay witness observes a claimant is a permissible factor in judging what weight to accord that witness' testimony); Sprague v. Bowen,

10

1   812 F.2d 1226, 1232 (9th Cir. 1987) (noting that "[d]escriptions
2   by friends and family members in a position to observe a
3   claimant's symptoms and *daily* activities have routinely been
4   treated as competent evidence.")(emphasis added).

5       It is significant that the ALJ's assessment of the statements
6   of Plaintiff's in-laws was also based on reasons articulated
7   elsewhere in the ALJ's decision.  For example, Plaintiff's father-
8   in-law reported that, on his visits to Plaintiff's home, Plaintiff
9   had become "incapacitated by pain," and demonstrated an "inability
10  to do even the simplest of tasks."  Ar at 460.  Claimant's mother-
11  in-law reported that when Plaintiff had come to visit her in
12  Oregon, she "is always laid up and not able to do anything for
13  days."  AR at 462.  In his decision, however, the ALJ noted that
14  Plaintiff reported participation in such activities as "care for
15  her children, taking them to school and picking them up from
16  school."  AR at 361.  The ALJ further noted that Plaintiff had
17  reported cooking, cleaning, shopping, watching television,
18  reading, and visiting with her mother.  AR at 362.  Finally, the
19  ALJ noted that the death of Plaintiff's mother forced her to do
20  more for herself, and that she was employed from March 2000 to
21  July 2000 as a census bureau enumerator/crew leader.  Id.  These
22  apparent conflicts between the statements of Plaintiff's in-laws
23  and Plaintiff's own statements regarding her daily activities
24  provide an additional, legitimate basis on which the ALJ properly
25  discounted the weight accorded to the statements of Plaintiff's
26  family members.  See, e.g., Bunnell v. Sullivan, 947 F.2d 341, 346
27  (9th Cir. 1991)

11

Finally, Plaintiff argues that the ALJ erred by offering "no reasons for rejecting the testimony from Mr. Patterson, Claimant's husband." Pl. Mem. at 16. Plaintiff asserts that in noting only that "consideration" was given to Mr. Patterson's testimony, the ALJ ran afoul of Social Security Ruling 96-7p, directing ALJs to provide "specific reasons for the finding on credibility, supported by evidence in the case record." Pl. Mem. at 16. Defendant counters by noting that Mr. Patterson never testified to having witnessed Plaintiff's allegedly debilitating panic attacks, and that, in any event, the ALJ provided proper reasons for declining to fully credit Mr. Patterson's testimony when he noted its inconsistency with Plaintiff's daily activities, as reported by both Mr. Patterson and the Claimant. Def. Mem. at 8. This Court finds that although the ALJ did not explicitly state that he was according Mr. Patterson's testimony little or no credibility because of its inconsistency with other testimony regarding Plaintiff's activities, the ALJ did not thus contravene the mandate of Social Security Ruling 96-7p. A fair reading of the ALJ's decision demonstrates that he did not find Mr. Patterson's testimony entirely credible because of its inconsistency with other aspects of his testimony, and because of its inconsistency with elements of Plaintiff's testimony. See AR at 361-63. This is a permissible basis on which to reject layperson testimony, see Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995), and where the ALJ's credibility determinations are based on proper criteria, this Court is not empowered to second-guess those determinations. See Lewis, 236 F.3d at 509.

12

1  Because the ALJ based his credibility determination with
2  respect to Claimant's testimony and the testimony of her family
3  members on permissible criteria, the final remaining inquiry for
4  this Court is whether the ALJ's finding that Plaintiff is not
5  disabled was supported by substantial evidence.  See 42 U.S.C. §
6  405(g).  In determining that Plaintiff was not disabled, the ALJ
7  credited the testimony of the vocational expert offered at the
8  initial hearing held on December 1, 1998.  AR at 363.  At that
9  hearing, the vocational expert testified in response to a
10 hypothetical question that certain jobs existed both nationally
11 and regionally that would be appropriate for persons exhibiting
12 physical restrictions similar to those the ALJ ultimately found to
13 apply to the Plaintiff.  See AR at 438-39; 363.  Accordingly,
14 because the ALJ's finding that Plaintiff is not disabled was based
15 on both Plaintiff's own testimony with respect to her daily
16 activities and the report of the vocational expert offered at a
17 previous hearing, the ALJ's decision was based on "substantial
18 evidence" as that term has been construed by the Ninth Circuit.
19 See Reddick, 157 F.3d at 720.  Although this case does present a
20 close call because of the lack of definitive and unambiguous
21 medical evidence on either side, where the evidence could
22 reasonably support either affirming or reversing the ALJ's
23 decision, this Court may not substitute its judgment for the ALJ's
24 decision.  Reddick, 157 F.3d at 720-21.

### V.  CONCLUSION

26 Although the ALJ should not have considered the challenged
27 report of Dr. Bhattacharyya after he failed to honor a subpoena,

13

the ALJ's decision was nonetheless supported by substantial evidence because he used permissible criteria in assessing the credibility of the testimony offered by Plaintiff's family members, and because the ALJ based his decision on the testimony of a vocational expert offered at a previous hearing, the testimony of the Claimant herself, and the entirety of the medical evidence.  Accordingly, Plaintiff's motion for summary judgment is DENIED and Defendant's cross-motion for summary judgment is GRANTED.

IT IS SO ORDERED.

Date: August 29, 2005              _____

UNITED STATES DISTRICT JUDGE